IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CHARLENE K. WISBEY,            )
                               )
            Plaintiff,         )          4:08CV3093
                               )
        v.                     )
                               )
CITY OF LINCOLN, Nebraska,     )          MEMORANDUM AND ORDER
                               )
            Defendant.         )
                               )

Pending before me are the cross-motions for summary judgment filed by the plaintiff, (filing no. 21), and the defendant, (filing no. 16).[1]  The plaintiff's complaint alleges she is entitled to injunctive relief and damages under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 et. seq., and the Family Medical Leave Act (FMLA), 29 U.S.C. § 1612.  Filing No. 1. The plaintiff claims the undisputed facts establish that the City of Lincoln ("City") violated the plaintiff's rights under the ADA and FMLA.  The City argues the plaintiff has not and cannot prove the elements of her claims, and under the undisputed evidence, the defendant is entitled to judgment as a matter of law.

For the reasons discussed below, the defendant's motion for summary judgment will be granted, and the plaintiff's motion will be denied.

_____

[1]See filing no. 30, "Consent to Exercise of Jurisdiction by a United States Magistrate Judge and Order of Reference," and 28 U.S.C. § 636(c).

STATEMENT OF FACTS

The following summarizes the undisputed facts of record.

The plaintiff was employed as an emergency dispatcher for the City for twenty-seven years until her employment was terminated on April 3, 2007.  Julie Righter ("Righter") has been the Communications Manager for the City of Lincoln Emergency Communications/911 Division since 1993.  Filing No. 18-2, at CM/ECF p. 19; filing no. 18-3, at CM/ECF p. 1; filing no. 22-3, (Righter testimony), at 19:12-19.

Prior to 2007, the plaintiff was never disciplined for failing to concentrate while performing her job and, with the exception of a probable anxiety attack that occurred sometime between 2003 and 2005, did not exhibit undue anxiety or an inability to concentrate while performing her job.  Filing No. 22-3 (Righter testimony), at 21:1-15; (Wisbey testimony), at 62:13-63:6.  Her work performance evaluations through December 2006 described her as a good dispatcher with no problems identified.  Filing No. 22-3 (Wisbey testimony), at 64:21-65:2.

Righter was aware the plaintiff was under medical care in early January 2007.  Filing No. 22-3 (Righter testimony), at 23:16-24.  The plaintiff submitted a Family Medical Leave application and medical certification to Righter in late February 2007.  Filing No. 18-3, at CM/ECF p. 1.  The plaintiff's FMLA leave request stated leave was needed due to "[a] serious health condition that renders me unable to perform the essential functions of my job."  Filing No. 18-2, at CM/ECF p. 11; filing no. 18-3, at CM/ECF p. 3.

When the FMLA request was made, the plaintiff was under the care of treating psychiatrist, Mona Pothuloori, M.D.  Dr. Pothuloori's medical certification accompanying the FMLA request stated, "Charlene suffers from recurring cycle depression, anxiety . . . it interferes with her sleep, energy level, motivation, concentration . . . ."  Filing No. 18-2, at CM/ECF p. 12.  The medical certification explained that the condition had existed for several years and was ongoing, and the plaintiff remained under Dr. Pothuloori's care for treatment of depression. Although Dr. Pothuloori's medical certification stated the plaintiff was "able to perform any one or more of the essential functions of the employee's job," (filing no. 18-2, at CM/ECF p. 12), it also stated the plaintiff would need to take leave from work intermittently over the following six months or longer. Filing No. 18-2, at CM/ECF p. 12; filing no. 18-3, at CM/ECF p. 4.

Righter reviewed the FMLA request and Dr. Pothuloori's medical certification and noticed that, according to the certification, the plaintiff's mental state interfered with her concentration and energy level.  Righter questioned whether the plaintiff was capable of performing the functions of her job because an "Emergency Service Dispatcher II must operate with a high level of concentration as they are often required to make split second decisions that may have life and death implication relative to both the public safety of first responders as well as the general public."  Filing No. 18-3, at CM/ECF p. 1 ¶ 4.  See also, filing no. 22-3 (Righter testimony), at 18:6-24.  Righter spoke with Don Taute ("Taute"), Personnel Director, and expressed her concern that the plaintiff's impaired energy level and inability to concentrate may make her unable to perform her job. Filing No. 18-2, at CM/ECF p. 1, ¶¶ 3-4.

3

At Taute's suggestion, and based on the information disclosed in the plaintiff's FMLA request and the medical certification, Righter asked William Kostner ("Kostner"), Risk Manager for the City, to schedule a fitness-for-duty examination for the plaintiff.  Filing No. 18-2, at CM/ECF p. 1, ¶¶ 3-4, filing no. 18-3, at CM/ECF pp. 1-2, ¶ 5; filing no. 22-3 (Righter testimony), at 33:11-17.  On March 14, 2007, Righter notified the plaintiff that she needed to attend a fitness-for-duty examination by Dr. Eli Chesen on March 22, 2007.  Filing No. 18-3, at CM/ECF pp. 1-2 ¶¶ 5-6 & p. 8.

Kostner sent a letter to Dr. Chesen on March 15, 2007, and asked the doctor to examine the plaintiff and provide a professional medical opinion as to whether the plaintiff was medically qualified to continue working as an Emergency Service Dispatcher II for the City.  Filing No. 18-2, at CM/ECF p. 3. The City provided Dr. Chesen with a copy of the plaintiff's FMLA leave request and accompanying information, (filing no. 18-2, at CM/ECF pp. 11-12), her lost time record, (filing no. 18-2, at CM/ECF pp. 13-16), and materials explaining the Emergency Service Dispatcher II position.  Filing No. 18-2, at CM/ECF p. 1, ¶ 5 & pp. 3-10.

The position description for an Emergency Service Dispatcher II stated that such employees must receive information concerning requests for service; dispatch police and sheriff's units to calls for service; monitor and respond to radio transmissions; keep informed of the location and status of law enforcement units in the field; dispatch fire and EMS to calls for service; monitor and respond to radio transmissions; and keep informed of fire and

4

medical units in the field.  Filing No. 18-2, at CM/ECF pp. 4-6, 8.
The job requires:

> [P]rompt, efficient and accurate receiving, dispatching
> and processing of emergency service calls over the 911
> and related seven-digit systems from the general public
> and other authorized personnel requiring emergency
> actions by the police, sheriff, fire, EMS units,
> fire/rescue squads and other emergency services[, and]
> the ability to think and act quickly and calmly in
> emergency situations, . . . obtain accurate and
> complete information from callers who may be frantic
> and incoherent due to emergency conditions[, and]
> function accurately while working under considerable
> pressure.

Filing No. 18-2, at CM/ECF pp. 8-9.

As described by the plaintiff, her mental condition
intermittently interferes with her ability to perform this work.

> At times my depression arises, and it makes me very
> tired where I can sleep 20 straight hours.  And that's
> where it interferes.  Being tired at work was not ever
> a problem.  But going on a string of six, seven
> straight days, I can get very tired due to the
> medication I'm on or due to the fact that I just get
> tired.  So that's the only time I've ever had to call
> in sick is that -- when my body just shuts down and
> gets tired, it wants rest and rebooted.

Filing No. 22-3 (Wisbey testimony), at 61:20-62:3.  The plaintiff
claims she has never had difficulty discerning whether it was
safe for her to report to work, and she has never had a problem
with her concentration level while at work.  Filing No. 22-3
(Wisbey testimony), at 62:4-12.

The plaintiff requested intermittent Family Medical Leave on
February 24, 2007 because there are times she recognizes, in

advance, that she will be unable to do the job that day.  Filing
No. 22-3 (Wisbey testimony), at 65:3-9.  As explained by the
plaintiff:

> Normally, I work third shift, so I'm usually up by 8:30
> or nine o'clock at night.  I can tell by the time that
> I get up that -- whether I am fit, judge on my own
> self, to be able to go in there and do my job.  I would
> never endanger anybody on the street by going in there
> tired or unprepared mentally.  And that's when I stay
> home.

Filing No. 22-3 (Wisby testimony), at 66:13-19.  The plaintiff
had, over the three years preceding her termination, used
substantial amounts of sick leave and Family Medical Leave.
Filing No. 18-2, at CM/ECF pp. 13-16.  The plaintiff requested
Family Medical Leave four or five times in the past for her foot
surgery, carpal tunnel surgery, and depression.  Her requests for
leave were never denied.  Filing No. 26-2 (Wisbey testimony), at
24:10-25.


      Dr. Chesen examined the plaintiff and issued a report dated
March 22, 2007.  In that report, Dr. Chesen noted the plaintiff
reported having problems with depression for the last ten years,
and insomnia for the last five years.  The plaintiff had received
treatment from her psychiatrist, Dr. Pothuloori, for the past two
years, with scheduled visits every three to four months.  The
plaintiff told Dr. Chesen that her anxiety was under control, but
her insomnia and depression were not under control.  She reported
that when she receives radio calls involving endangered lives she
witnesses the event through the radio.  She reported that her
psychiatrist, chiropractor, and others had all advised her to
leave her job.  Filing No. 18-2, at CM/ECF at pp. 19-21.  Dr.
Chesen concluded:

> [Plaintiff] has chronic relapsing depression (unipolar
> depression) which intermittently interferes with her
> ability to function at full capacity at work vis-a-vis
> tiredness.
>
> Given her present status, I do not feel she is fit for
> duty as described in her job description, especially as
> related to tiredness, her ability to concentrate and
> her ongoing propensity to likely miss work.

Filing No. 18-2, at CM/ECF at p. 21.

Kostner received a copy of Dr. Chesen's report on March 28,
2007, and forwarded it to Taute and Righter.  Filing No. 18-2, at
CM/ECF p. 1, ¶ 7.  Based on Dr. Chesen's conclusion that the
plaintiff was not fit for duty, the City placed the plaintiff on
Administrative Leave with Pay on March 29, 2007.  Filing No. 18-
2, at CM/ECF p. 2, ¶ 8; filing no. 18-3, at CM/ECF p. 2, ¶ 7-8.
Righter told the plaintiff that the City was concerned the
plaintiff would have a problem performing her job duties because
Dr. Chesen found that she was unfit for duty.  Righter also told
the plaintiff that the City could not allow her to work in a
position she was found to unfit to perform, and that as a
consequence, the plaintiff was being placed on Administrative
Leave with Pay.  Filing No. 18-3, at CM/ECF p. 2, ¶ 8.  The
plaintiff told Righter she believed she could perform her job,
and asked Righter if she could do something else or go part time
since her job meant so much to her and she was so close to
retirement.  Righter responded that the plaintiff could not work
part time.  Filing No. 22-3 (Wisbey testimony), at 65:21-66:17.

The plaintiff was notified that a meeting was scheduled for
April 3, 2007 to discuss plaintiff's employment with the City.
Filing No. 18-3, at CM/ECF p. 2, ¶ 8 & p. 9.  On April 3, 2007,
the city met with the plaintiff and provided her with a letter

explaining that Dr. Chesen had found her unfit for duty and her employment was being terminated.  Filing No. 18-2, at CM/ECF p. 2, ¶ 9; filing no. 18-3, at CM/ECF p. 2 ¶ 9.  The letter stated "for your own safety it is important that you not continue in your present position as an Emergency Service Dispatcher II." Filing No. 18-2, at CM/ECF p. 2, ¶ 10; filing no. 18-3, at CM/ECF p. 10.  The plaintiff was terminated because Dr. Chesen found her unfit to perform her job.  Filing No. 18-4, at CM/ECF pp. 2-3.

No one contacted and solicited additional information or opinions from the plaintiff's treating psychiatrist, Dr. Pothuloori until after the plaintiff's employment was terminated. Filing No. 22-3 (Righter testimony), at 40:24-41:4.  In an undated report (filing no. 22-3, at CM/ECF pp. 23-24), a copy of which was not provided to Righter until the night before the plaintiff's City Personnel Board hearing, Dr. Pothuloori stated she disagreed with Dr. Chesen's conclusions and asserted the plaintiff was fit to perform her job with the City.  Filing No. 22-3 (Righter testimony), at 41:5-42:15.

Kostner, who drafted the letter advising the plaintiff that her employment was terminated, administers the city's Long Term Disability Plan.  The termination letter encouraged the plaintiff "to avail [her]self of the City's long term disability benefits." Filing No. 18-2, at CM/ECF p. 11.  Under the terms of the City's LTD policy, for the first 24 months when benefits are payable, a person is totally "disabled" if a disability prevents the employee from performing the duties of his or her regular occupation.  Filing No. 18-2, at CM/ECF p. 2, ¶ 12 & p. 33, ¶ 7.

SUMMARY OF ARGUMENTS

In support of her motion for summary judgment, the plaintiff claims the undisputed facts establish that the defendant regarded her as disabled and terminated her employment in violation of the ADA.  Filing No. 23, pp. 9-11.  Wisbey further argues the City violated the ADA by failing to engage in the interactive process to determine whether reasonable accommodations were available.  Filing No. 23, pp. 13-16.  The plaintiff claims there is no evidence that her continued employment with the City posed any risk to the health and safety of others, (filing no. 23, pp. 17-23), there was no business necessity justifying the City's decision to require plaintiff to submit to a fitness-for-duty examination, and that requiring the medical exam violated plaintiff's rights under the ADA, (filing no. 23, pp. 23-25).

The plaintiff further argues the City violated the FMLA by disciplining the plaintiff for exercising her right to medical leave (filing no. 23, pp. 25-29), and when plaintiff submitted a request for intermittent medical leave, the City unlawfully retaliated by requiring the plaintiff to submit to a fitness-for-duty examination and ultimately terminating plaintiff's employment.  Filing No. 23, pp. 29-33.

In support of its motion for summary judgment, the City notes that the plaintiff does not allege she is disabled, but only that she was regarded as disabled.  The City claims the plaintiff was not discharged based on a perceived disability, but rather on the independent medical determination that the plaintiff was, in fact, unable to perform her job as an emergency dispatcher.  Filing No. 17, p. 8; filing no. 25, p. 2.  The City claims it had a reasonable basis for questioning whether the

9

plaintiff could perform her job, and under such circumstances,
demanding a fitness-for-duty examination is not evidence of
discrimination.  Filing No. 17, pp. 9-11; filing no. 25, p. 3.
The City further argues that suggesting the plaintiff apply for
Long Term Disability benefits under the City's LTD plan does not
indicate the City regarded the plaintiff as disabled for the
purposes of the ADA, (filing no. 17, pp. 10-12); terminating the
plaintiff "for [her] own safety" based on a doctor's opinion does
not demonstrate the City regarded the plaintiff as disabled,
(filing no. 17, p. 12); the plaintiff cannot show she was
actually qualified to perform the essential functions of her
emergency dispatch position, (filing no. 17, pp. 12-13); and the
City need not provide reasonable accommodations to a person who
does not claim she is actually disabled, but rather claims she
was regarded as disabled.  Filing No. 17, pp. 13-14; filing no.
25, pp. 2-3.  The City also argues it had a legitimate,
nondiscriminatory reason for terminating the Plaintiff's
employment; specifically, Wisbey was terminated because she was
found unfit for duty by a physician.  Filing No. 17, p. 13.

As to the plaintiff's FMLA claim, the City argues there is
no evidence the plaintiff was subjected to an adverse employment
action for exercising her rights under the FMLA because requiring
a fitness-for-duty exam is not an adverse employment action, more
than a temporal connection between the request for FMLA and
plaintiff's employment termination is necessary to satisfy the
causation requirement, and the City had a legitimate
nondiscriminatory reason for terminating the plaintiff's
employment.  Filing No. 17, pp. 15-16; filing no 25, pp. 4-6.
Finally, the City never denied the plaintiff's request for, and
never interfered with her right to take, family medical leave.
Filing No. 25, pp. 3-5.

LEGAL DISCUSSION

I.   STANDARD OF REVIEW

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  In response to the moving party's evidence, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

Although "summary judgment should seldom be granted in discrimination cases," (Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000)), summary judgment should be granted in a discrimination case when the plaintiff has failed to present "any significant probative evidence tending to support the complaint," or has failed to "make a sufficient showing on every essential element of its claim on which it bears the burden of

11

proof." Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 718 (8th Cir. 2000).  "[T]he focus of inquiry at the summary judgment stage 'always remains on the ultimate question of law:  whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of [the protected characteristic].'" Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1018 (8th Cir. 2005) (quoting Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996)).

II.  THE PLAINTIFF'S CLAIMS FOR RELIEF.

The plaintiff seeks recovery under the ADA and the FMLA. These congressional acts create fundamentally different employment rights.  The ADA was enacted to eliminate discrimination against qualified individuals with disabilities. 42 U.S.C. § 12101.  The FMLA was created to afford job security to "employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).  "While the ADA's protection is almost perpetual, lasting as long as the employee continues to meet the statutory criteria, the FMLA grants eligible employees 12 weeks of leave to deal with a specified family situation or medical condition." Spangler v. Federal Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir. 2002) (citing 29 U.S.C. § 2612).

The ADA does not protect an employee unable to perform the essential functions of the employment position, while the FMLA protects employees who are temporarily unable to perform their job from losing the job during the leave period.  See 29 C.F.R. § 825.115.  FMLA leave affords the employee time for treatment and recovery so that the employee may return to work.  Therefore, a

determination that an employee was not qualified to perform the
essential functions of her position under the ADA does not
automatically bar the employee's claim under the FMLA.  However,
if the employee returns from FMLA leave, and remains "unable to
perform an essential function of the position because of a
physical or mental condition, . . . the employee has no right to
restoration to another position under the FMLA.  However, the
employer's obligations may be governed by the Americans with
Disabilities Act (ADA)."  Reynolds v. Phillips & Temro Indus.,
Inc., 195 F.3d 411, 414 (8th Cir. 1999)(quoting 29 C.F.R. §
825.214(b)).

The facts underlying the plaintiff's claims highlight the
interrelationship between, but distinct purposes and application
of, the ADA and FMLA.

1.   The Americans With Disabilities Act.

An ADA plaintiff bears the initial burden of proving a prima
facie case of discrimination.  If the plaintiff meets this
burden, then the employer has the burden to articulate a
legitimate, nondiscriminatory reason for the adverse employment
action.  If the defendant meets this burden, the plaintiff must
then show that the defendant's proffered reason was a pretext for
discrimination.  Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435
(8th Cir. 2007).

An ADA claimant must make a prima facie showing that she:
(1) has a disability within the meaning of the ADA; (2) is able
to perform the essential functions of the job, with or without
reasonable accommodation; and (3) suffered an adverse employment
action as a result of the disability.  Duty v. Norton-Alcoa

13

Proppants, 293 F.3d 481 (8th Cir. 2002).  To prove she has a disability within the meaning of the ADA, the plaintiff claimant must establish (1) a physical or mental impairment that substantially limits a major life activity, (2) a record of such impairment, or (3) that she is regarded as having such an impairment.  Duty, 293 F.3d at 491.  See also, 42 U.S.C.A. § 12102.[2]

The plaintiff does not allege she has an actual disability as that term is defined under the ADA.  Rather, she claims the defendant regarded her as having such an impairment.[3]  To prove her rights under the ADA were violated because the City "regarded" her as disabled, the plaintiff must prove the City mistakenly believed the plaintiff had an impairment, or that it mistakenly believed the impairment the plaintiff actually had substantially limited her ability to perform her job.[4]  The ADA's

---

[2]Although the ADA was amended by the Americans with Disabilities Amendments Act of 2008 effective January 1, 2009, these three categories of "disability" are included in both the current and pre-amendment versions of the ADA.

[3]This case was scheduled to be tried on April 19, 2009.  At this stage of the litigation, and with no motion for leave to amend filed and pending, the plaintiff's claims for relief will be limited to what she has pleaded.

[4]The express purpose of The Americans with Disabilities Amendments Act of 2008 was to broaden the scope of the ADA and to enact legislation effectively overruling the holdings in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and Toyota Motor Manufacturing v. Williams, 534 U.S. 184 (2002).  Pub.L. No. 110-325, § 2(b)(2-5)(2008).

Congress also intended to "reinstate the reasoning of the Supreme Court in School Board of Nassau County v. Arline, 480 U.S. 273 (1987) which set forth a broad view" of regarded as disabled.  Pub.L. No. 110-325, § (2)(b)(3).  Under The Americans with Disabilities Amendments Act of 2008:

"provision addressing perceived disabilities is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780, 784 (8th Cir. 2006). See also, 42 U.S.C.A. § 12101(a)(2)(effective January 1, 2009)("[I]n enacting the ADA, Congress recognized that physical and mental disabilities in no way diminish a person's right to fully participate in all aspects of society, but that people with physical or mental disabilities are frequently precluded from doing so because of prejudice, antiquated attitudes, or the failure to remove societal and institutional barriers."). The "regarded as" provision of the ADA extends coverage to those with an impairment that "might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment." School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 282-283 (U.S. 1987)(see also, Pub.L. No. 110-325, § (2)(b)(3), which "reinstated" the reasoning of School Board of Nassau County v. Arline, 480

---

An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102. Courts have held that these amendments are not applicable to alleged discriminatory acts that occurred prior to January 1, 2009. See e.g., Ekstrand v. School Dist. of Somerset, 2009 WL 564672, 7 (W.D.Wis. 2009). However, I need not address whether the 2008 ADA amendments apply retroactively because I find that under either the pre-amendment or current version of the ADA, the plaintiff has failed to meet her burden of proof.

U.S. 273 (1987)).

The City terminated the plaintiff based on the report of a
psychiatrist, Dr, Eli Chesen, who examined the plaintiff and
concluded she was not able to perform her duties as a emergency
dispatcher for the City.  Although the plaintiff claims this
report should not have been relied on by the City because Dr.
Chesen was not truly independent, but rather a hired expert for
the City, she has presented no evidence that Dr. Chesen's
opinions were rendered as a result of bias or that the City had
any reason to believe they were.

To the contrary, Dr. Chesen's opinions were supported, not
undermined, by the plaintiff's own statements and the statements
of her treating physician on the medical certification form
accompanying the plaintiff's FMLA leave request.  On her FMLA
request, the plaintiff acknowledged having a "serious health
condition that renders me unable to perform the essential
functions of my job," (filing no. 18-2, at CM/ECF p. 11), and
during her examination, she told Dr. Chesen that her insomnia and
depression were not under control, and her psychiatrist,
chiropractor, and others had advised her to leave her job.  Dr.
Pothuloori's medical certification stated the plaintiff suffers
from depression and anxiety that interfere with her "sleep,
energy level, motivation, concentration."  Filing No. 18-2, at
CM/ECF p. 12.  The certification states the plaintiff is "able to
perform one or more of the essential functions of the employee's
job," but she will need time off intermittently to perform those
functions over the next six months or longer.  Filing No. 18-2,
at CM/ECF p. 12.

Common sense dictates, and the City's written description of
the Emergency Service Dispatcher II position confirms, that those
performing the job of a emergency dispatcher must remain alert,
and consistently able to concentrate, and respond appropriately
and quickly.  The plaintiff argues she can perform the emergency
dispatcher job because she knows when she is able to fulfill her
job requirements based on how she feels when she wakes up two or
three hours before her shift begins.  However, the significant
responsibilities of an emergency dispatcher cannot be
overemphasized.  Such employees are often the first-line actors
in assisting members of the public, law enforcement, fire
department, and medical profession in promptly, safely, and
appropriately responding to emergencies.  The stress an emergency
dispatcher may encounter on any particular shift is wholly
unpredictable, yet the person performing this job must be able to
reliably report for work and perform the job.  Although the
plaintiff believes she should be allowed to decide, on a night-
by-night basis, whether she is capable of working, her need to do
so actually "implies that she is not qualified for a position
where reliable attendance is a bona fide requirement . . . ."
Spangler, 278 F.3d at 853.  "[R]egular attendance at work is an
essential function of employment." Brannon v. Luco Mop Co., 521
F.3d 843, 849 (8th Cir. 2008).

It is undisputed the City did not terminate the plaintiff
based on archaic attitudes, erroneous perceptions, myths, and
stereotypes, but rather on the opinion of a psychiatrist who
examined the plaintiff and was informed of her job requirements.
When an employee's termination is based upon the recommendations

17

of a physician, it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability.[5] Kozisek, 539 F.3d at 935; Breitkreutz, 450 F.3d at 784. See also, School Bd. of Nassau County, Fla., 480 U.S. at 285 (reinstated under Pub.L. No. 110-325, § (2)(b)(3) and explaining that by enacting employment laws to protect the disabled, Congress intended to replace "reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments").

The plaintiff argues that requiring the plaintiff to have a fitness-for-duty examination proves the City perceived the plaintiff as disabled and violated 42 U.S.C.A. § 12112(d)(4)(A) of the Act. The ADA states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a

---

[5]The plaintiff claims Dr. Pothuloori did not agree with Dr. Chesen, and the City acted improperly by failing to consider Dr. Pothuloori's opinion. Dr. Pothuloori believes the plaintiff suffers from PTSD; Dr. Chesen does not. In all other respects, Dr. Pothuloori's opinion letter does not challenge Dr. Chesen's medical opinions, but states the plaintiff can perform her job provided she is allowed intermittent leave.
Dr. Pothuloori's written opinion is undated, and based on the evidence of record, it was not presented to the City until after the decision to terminate the plaintiff's employment was made. The report is therefore irrelevant in determining whether the City violated the ADA at the time it decided to terminate the plaintiff' employment. Kozisek v. County of Seward, Nebraska, 539 F.3d 930, 935 (8th Cir. 2008)(holding an after-acquired physician report was not relevant in deciding if the County, at the time it imposed restrictions on plaintiff's continued employment, based its decision on misconceptions, myths or stereotypes). Moreover, the requirements of the ADA, not the physicians' recommendations, govern whether the employer must accommodate any impairments identified by the physicians.

>           disability or as to the nature or severity of the
>           disability, unless such examination or inquiry
>           is shown to be job-related and consistent with business
>           necessity.

42 U.S.C.A. § 12112(d)(4)(A).[6]

The plaintiff's fitness-for-duty examination was ordered because the information within the plaintiff's FMLA request and accompanying medical certification indicated that due to the plaintiff's mental impairments, her sleep, energy level, motivation, and ability to concentrate were intermittently impaired.  The City was thereby placed on notice, and was reasonably concerned, that the plaintiff may have difficulty maintaining the level of alertness and concentration required of an emergency dispatcher.  "The steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof . . . that the employer regarded the employee as disabled."  Krocka v. City of Chicago, 203 F.3d 507, 515 (7th Cir. 2000)("It was entirely reasonable, and even responsible," for the police department to evaluate the officer's fitness for duty "once it learned that he was experiencing difficulties with his mental health.").

The plaintiff advised the City that she was experiencing intermittent problems with her concentration, energy level, motivation, and sleep.  In such a case, a fitness-for-duty examination is job related and consistent with business necessity.  Although the City was not aware of any past episodes wherein the plaintiff was unable to perform her job due to mental

----

[6]This provision was not amended in The Americans with Disabilities Amendments Act of 2008.

impairments, the City was not required to "forgo a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries." Watson v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999)(holding that where a police department reasonably perceives an officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job related and consistent with business necessity).

In the termination letter given to the plaintiff, the City suggested she may wish to apply for Long Term Disability benefits under the City's policy.  This suggestion does not prove the City perceived the plaintiff as disabled based on erroneous or stereotypical assumptions concerning persons suffering from a mental health disorder.  The City made this suggestion after a doctor found the plaintiff was not fit for duty and the decision to terminate the plaintiff's employment was made.  Under such circumstances, reminding the plaintiff of potentially useful employee benefits was appropriate and cannot be construed as evidence that the City violated the ADA.

The plaintiff argues the defendant failed to engage in the interactive process and failed to afford the plaintiff reasonable accommodations.  The plaintiff does not claim to have "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(1)(A).[7]  The plaintiff alleges she was "regarded as" disabled in violation of the ADA. The reasonable accommodation requirement makes sense in a case of actual disability, but it "makes considerably less sense in the perceived disability context." Weber v. Strippit, Inc., 186 F.3d

---

[7]This definition of an actual disability was not changed in the The Americans with Disabilities Amendments Act of 2008.

907, 916 (8th Cir. 1999).  Under Eighth Circuit law, employers
are not required to provide reasonable accommodations to
employees "regarded as" disabled.  Id.

Even if the City was required to afford the plaintiff
reasonable accommodations, the plaintiff has failed to "make a
facial showing that a reasonable accommodation is possible."
Brannon v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008).  The
plaintiff asked if she could work part-time, (see 42 U.S.C. §
12111 (9)(B)), and this request was denied.  However, there is no
medical evidence that being assigned a part-time work schedule
would alleviate the plaintiff's intermittent inability to sleep
or concentrate, or that the plaintiff could, even with a reduced
schedule, reliably report for work.

Consistent with Dr. Pothuloori's medical certification and
her later-acquired opinion letter, the plaintiff's FMLA leave
request asked for intermittent leave.  Perhaps the plaintiff is
arguing that granting this request is a reasonable
accommodation.[8]  However, although allowing a medical leave of
absence might, in some circumstances, be a reasonable
accommodation, "an employer is not required by the ADA to provide

---

[8]The plaintiff's evidence includes the report of Dr.
Pothuloori which states the plaintiff can and should be allowed
to work in an environment that permits the plaintiff to
intermittently not report for work due to an exacerbation of her
illness.  Dr. Pothuloori states the plaintiff can perform her
job, but notes the plaintiff has required time off from work
intermittently "when she experiences exacerbation of her
illness," and her Post Traumatic Stress Disorder (PTSD) symptoms
"continue to erupt from time to time."  Filing No. 22-3, at
CM/ECF p. 23.  In other words, Dr. Pothuloori does not contradict
Dr. Chesen's opinion that the plaintiff will likely continue to
miss work, but she believes the City should accommodate these
sporadic and unscheduled absences.

an unlimited absentee policy." Brannon, 521 F.3d at 849. See also, Pickens v. Soo Line R.R. Co., 264 F.3d 773, 778 (8th Cir. 2001)(holding that plaintiff's suggested accommodation of "be[ing] able to work only when he feels like working" is unreasonable as a matter of law).

The plaintiff has failed to show the defendant perceived the plaintiff as disabled as that term is defined under the ADA. There is no evidence the City's decision to terminate the plaintiff's employment was based on archaic and erroneous beliefs regarding those inflicted with anxiety, insomnia, depression, Post Traumatic Stress Disorder, or any other mental impairment. The plaintiff claims a right to recovery solely on the basis of perceived disability and, as such, cannot claim the defendant failed to reasonably accommodate her mental impairment. Finally, even if the defendant was legally obligated to offer reasonable accommodations, the plaintiff has failed to make a facial showing that any such accommodations existed. The plaintiff's claim for recovery under the ADA must be denied as a matter of law.

II.   The Family Medical Leave Act.

Employees can assert two distinct types of claims under the FMLA. Interference or "(a)(1)" claims arise when an employer has denied or interfered with an employee's exercise of substantive rights under the FMLA, while retaliation or "(a)(2)" claims arise when the employer has discriminated against an employee who has exercised those rights. Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006).

To present an interference claim, the plaintiff must show only that she was entitled to a benefit denied. An employee can

prove interference with an FMLA right regardless of the
employer's intent.  "Interference includes 'not only refusing to
authorize FMLA leave, but discouraging an employee from using
such leave.'"  Stallings, 447 F.3d at 1050 (quoting 29 C.F.R. §
825.220(b)).  An employer interferes with the exercise of
protected FMLA rights when, due to consequences imposed by the
employer, employees become reluctant to exercise their rights for
fear of being fired or disciplined.  Stallings, 447 F.3d at 1050.
"An employee can prevail under an interference theory if [she]
was denied substantive rights under the FMLA for a reason
connected with [her] FMLA leave."  Stallings, 447 F.3d at
1050-51.

Under the undisputed evidence of record, the plaintiff's
right to family medical leave, as provided for under the FMLA,
was never denied.  Prior to February 2007, the plaintiff made
four or five requests for FMLA leave, each of which was granted.
The plaintiff has cited to no evidence that she reluctant to
request FMLA leave because she feared she would be fired or
disciplined.

The plaintiff's FMLA leave request signed on February 24,
2007 requested intermittent leave, to be determined by the
plaintiff, for the following six months or longer.  An FMLA
violation occurs only when an employer improperly denies a
request for leave, (Reed v. Lear Corp., 556 F.3d 674, 681 (8th
Cir. 2009) (emphasis added)), and the City was not required under
the FMLA to grant the plaintiff's February 2007 request.  "[T]he
FMLA does not provide an employee suffering from depression with
a right to 'unscheduled and unpredictable, but cumulatively
substantial, absences' or a right to 'take unscheduled leave at a
moment's notice for the rest of her career.'"  Spangler, 278 F.3d

at 853 (quoting Collins v. NTN-Bower Corp., 272 F.3d 1006, 1007 (7th Cir. 2001)).  To the extent the plaintiff may be alleging an FMLA interference claim, her claim must be denied as a matter of law.

To survive summary judgment on her FMLA retaliation claim, the plaintiff must present evidence that: (1) she exercised rights protected under the FMLA; (2) was adversely affected by an employment decision; and (3) there was a causal connection between exercising his rights under the FMLA and the adverse employment decision.  McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005).  An FMLA retaliation claim requires proof of retaliatory intent, but an employee pursuing an FMLA interference claim need only show that he was entitled to the benefit denied.  Stallings, 447 F.3d at 1050.  Unlike FMLA interference claims, retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework.  Stallings, 447 F.3d at 1051.

The plaintiff was not entitled to the self-determined, intermittent FMLA leave she requested in February 2007.  In other words, the right to take such leave was not protected under the FMLA.  While the plaintiff was terminated after she submitted this FMLA request, the termination was not caused by the fact that such a request was made, but was based on the medical information within the request and arising thereafter from the fitness-for-duty examination, both of which indicated she could not perform her job.  "[T]he FMLA does not provide leave for leave's sake, but instead provides leave with an expectation an employee will return to work after the leave ends."  Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 978 (8th Cir. 2005). The FMLA does not require an employer to retain an employee who

has not made a valid FMLA leave request; is not seeking temporary leave to recover from a disability or impairment, but rather on-going and intermittent leave; and cannot perform the essential functions of her job.  Throneberry, 403 F.3d at 978("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.").

Although the plaintiff may be claiming the fitness-for duty examination was unlawfully requested under the FMLA, as previously explained, the examination performed was job related and consistent with business necessity, and thus comported with the terms of the ADA.  The fitness-for-duty examination was not requested merely because the plaintiff requested FMLA leave, but because the plaintiff's request indicated she may not be able to perform the essential functions of her employment as an emergency dispatcher.  The FMLA is not violated when, in accordance with the ADA, the employer requires the employee to undergo a fitness-for-duty examination.  Porter v. U.S. Alumoweld Co, Inc., 125 F.3d 243, 247 (4th Cir. 1997).  See also, 29 C.F.R. § 825.312 ("After an employee returns from FMLA leave, the ADA requires any medical examination at an employer's expense by the employer's health care provider be job-related and consistent with business necessity.").

The plaintiff has failed to show that in requesting indefinite, intermittent, self-determined leave, she exercised a right to leave protected under the FMLA.  She has also failed to show that her employment termination was caused by the fact that she requested leave.  The plaintiff's employment was terminated because the information within the FMLA leave request placed the

25

City on notice that the plaintiff may not be able to perform her
job, this information prompted the City to order a fitness-for-
duty examination, and the psychiatrist who performed the
examination concluded the plaintiff was unable to perform an
emergency dispatcher job due to ongoing mental problems.  The
plaintiff's employment was terminated because she was unable to
perform her job, not because she requested family medical leave.
The plaintiff's FMLA retaliation claim must be denied as a matter
of law.

        IT THEREFORE HEREBY IS ORDERED:

        1.    The plaintiff's motion for summary judgment, (filing
              no. 21), is denied.

        2.    The defendant's motion for summary judgment, (filing
              no. 16), is granted.

        3.    This case is dismissed in its entirety.

        4.    Judgment shall be entered by separate document.

        DATED this 10th day of April, 2009.

                                BY THE COURT:

                                s/ David L. Piester
                                David L. Piester
                                United States Magistrate Judge